FILED
 2024 Sep-30 PM 06:47
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

SHELLEY ELAINE HELFERS,            )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )   Case No. 5:23-cv-00730-SGC
                                   )
COMMISSIONER, SOCIAL               )
SECURITY ADMINISTRATION,           )
                                   )
    Defendant.                     )

## MEMORANDUM OPINION[1]

The plaintiff, Shelley Elaine Helfers, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under Title II of the Social Security Act. (Doc. 1).[2] Helfers timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). As explained below, the Commissioner's decision is due to be reversed and remanded with instructions that benefits be awarded.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 13).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear as: Doc. __ at __. Citations to the administrative record (Doc. 11) refer to the page numbers assigned by the Commissioner and appear as: R.__.

I.      **Background and Procedural History**

Helfers has a high school education and completed beauty school; she worked as a hairdresser for many years. (R. 226, 772). Helfers's September 18, 2017 application alleged disability beginning on May 16, 2017, due to back and neck injuries, left shoulder bursitis, right shoulder rotator cuff tear, bursitis in both hips, and chronic pain. (R. 70-71, 187, 205, 222, 225). Helfers was 52 at her date of alleged disability onset. (R. 70). After her claim was denied initially and on reconsideration, Helfers requested a hearing before an Administrative Law Judge ("ALJ"). (*See* R. 78-91, 106). Following the hearing, the ALJ issued an unfavorable decision on February 3, 2020. (R. 10-22). The Appeals Council denied review, and Helfers appealed to the U.S. District Court for the Northern District of Illinois; she lived in that district at the time. (R. 1-6, 841-42). After Helfers filed her brief, the Commissioner sought reversal with remand for further administrative proceedings. (R. 850-51). On September 24, 2021, the court reversed and remanded the case for further proceedings. (R. 849).

On remand, the ALJ held a second hearing on January 13, 2023. (R. 783-834). The ALJ issued a second unfavorable decision on February 9, 2023; this decision is the subject of the instant appeal. (R. 761-772). This matter is ripe for judicial review. (*See* Doc. 21 at 2; Doc. 22 at 3).

## II. Statutory and Regulatory Framework, and the ALJ's Decision

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). A claimant must also show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Helfers did not engage in substantial gainful activity between her alleged onset date of May 16, 2017, and December 31, 2022—her date last insured. (R. 763).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe

physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Helfers has the following severe impairments:

> bilateral plantar fasciitis; bilateral tibial tendonitis; degenerative joint disease, status post right shoulder arthroscopy with rotator cuff repair and subacromial decompression and revision rotator cuff repair; fibromyalgia, degenerative disc disease, cervical, thoracic, and lumbar spine, with lumbar spinal instrumented fusion; hypertension; obstructive sleep apnea; gastroesophageal reflux disease, restless leg syndrome.

(R. 763).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Helfers does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (R. 764).

4

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ concluded Helfers has the RFC to perform a limited range of light work. Specifically, the ALJ determined Helfers was limited to:

> occasional pushing and pulling with bilateral lower extremities; occasional climbing ramps and stairs, but never ladders, ropes and scaffolds; occasional stooping and crawling; frequent reaching in all directions, except only occasional reaching overhead bilaterally; frequent fingering and handling bilaterally; no assembly line work.

(R. 764). At the fourth step, the ALJ found Helfers could perform her past relevant work as a hairdresser. (R. 772). Accordingly, the ALJ found Helfers was not disabled through her date last insured and did not analyze the fifth step of the sequential evaluation process. (*Id.*).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination of

whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."

*Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   Discussion

Helfers challenges the ALJ's decision on several grounds: (1) in discounting the opinions of her treating physician, Marie Kirincic, M.D., and the Consultative Examiner, William Lopez, M.D. (Doc. 21 at 4-15; Doc. 23); (2) in analyzing her testimony concerning pain  (Doc. 21 at 15-24); and (3) in addressing the opinions of the Vocation Expert ("VE") who testified during the hearing (*Id.* at 24-26).  Because Helfers is entitled to relief based on her arguments regarding Dr. Lopez's opinion and the VE's testimony, discussion of the remaining issues is not necessary.

The SSA's 2017 regulations regarding evaluation of medical opinions govern Dr. Lopez's report.  For claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. § 404.1520c. Instead, an ALJ must consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating medical opinions and prior administrative medical findings.  *Id.*  The most important factors are supportability and consistency.  *Bradford v. Soc. Sec. Admin.*, No. 21-00129-LSC, 2022 WL 3036608, at *4 (N.D. Ala. Aug. 1, 2022) ("While the ALJ must explain

the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors.") (footnote omitted).

As the regulations explain, the "supportability" factor focuses on the medical opinion at issue and the sources on which it relies. 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). Meanwhile "consistency" focuses on the record as a whole and how it compares with the opinion at issue. 20 C.F.R. § 416.920c(c)(1) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

Here, Dr. Lopez conducted a consultative examination on December 9, 2017. (R. 549-555). Dr. Lopez's report first summarizes the medical history and symptoms Helfers related to him—under the heading "History of Present Illness"—followed by the findings of his physical examination. (R. 549-51). Dr. Lopez reported:

> The claimant was able to get on and off the exam table with no difficulty. The claimant could walk greater than 50 feet without

8

support. The gait was slightly-antalgic without the use of assistive devices. She was able to perform toe/heel walk with mild difficulty. She had severe difficulty with tandem walking. The grip strength was 5/5 in both hands. There was normal ability to grasp and manipulate objects. The claimant was able to fully extend the hands, make fists and oppose the fingers. The range of motion of the right shoulder was mildly limited. The range of motion of the left shoulder, elbows, and wrists was normal. The range of motion of the hips, knees and ankles was normal. The range of motion of the cervical spine was mildly limited. Tender mid lumbar area. No spasms. The range of motion of the lumbar spine was mildly limited. Straight leg rase test: negative bilaterally.

(R. 551).

Dr. Lopez concluded Helfers suffered from cervicalgia without radiculopathy, cervical degenerative disc disease ("DDD"), lumbago with radiculopathy, lumbar DDD, "history of right rotator cuff tear, status postsurgical repair," and chronic right hip bursitis. (R. 552). Dr. Lopez concluded his report under the heading "Medical Source Statement (Activities of Daily Living)" by opining:

> She is able to walk for 10 minutes at a time. She is able to stand for 15 minutes at a time. She is able to sit. She is able to handle and manipulate objects. She is able to lift, carry, push, and pull objects up to 8 pounds with the right hand. She is able to lift, carry, push, and pull objects up to 15 pounds with the left hand. She is able to climb up to 10 steps of stairs at a time. She is able to cook and prepare her own meals. She is able to do a little housecleaning. She does not vacuum. She is able to feed, bathe, groom, and dress herself. She is able to drive. She is able to shop but less frequently and occasionally needs help. She is able to hear and speak.

(R. 552).

The ALJ found Dr. Lopez's opinion was not persuasive for several reasons,

9

reproduced below:

> It is not clear that this medical source statement represents the doctor's opinion as to the claimant's maximum residual functional capacity, given that it is not stated in maximal terms and, notably, includes what appear to be recitations of the claimant's reports of daily activity such as that she "does not vacuum." To the extent that this does represent this source's opinion as to the claimant's maximum residual functional capacity, it is not supported by the examination performed by this source and is not consistent with other evidence in the record. The consultative examination does not support the degree of limitation in standing and walking that this statement purports to assess, given that the claimant's gait was only "slightly-antalgic" and she had normal motor functioning in her lower extremities. While abnormalities are noted in this 2017 consultative examination, the longitudinal record consistently notes that the claimant can walk independently and she reports activities such as mowing the lawn and travelling, in addition to basic daily functions. Notably, this statement assesses no limitations on her ability to reach, handle, or finger, but does indicate that she could lift, carry, push, and pull up with [sic] fifteen pounds with just the left upper extremity. The source did not opine as to her ability to lift, carry, push, and pull with both upper extremities together, but her capacity for eight pounds with the right and fifteen with the left would appear consistent with the demands of light work. Nonetheless, given the inconsistencies with respect to the claimant's ability to stand and walk and the lack of support for the purported findings with respect to her activities of daily living based on this single examination in the absence of a longitudinal treating relationship [sic]. Finally, this assessment was made less than a year after the alleged onset date and multiple surgeries and prior to significant additional treatment to address the claimant's complaints. For these reasons, this assessment is not persuasive as to the claimant's maximum residual functional capacity over the entire period.

(R. 770-71).

Although Dr. Lopez opined Helfers would face significant limitations lifting, carrying, pushing, and pulling with her arms (collectively, the "Lifting

10

Restrictions"), as well as with standing and walking, the ALJ's analysis focused primarily on her ability to stand and walk. Indeed, to the extent the ALJ discounted Dr. Lopez's opinion as not "stated in maximal terms," plainly this rationale does not apply to the Lifting Restrictions, limiting Helfers to no more than 8 pounds on the right and 15 pounds on the left. (R. 770; *see* R. 552). The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" specific categories of work-related activities. 20 C.F.R. § 416.913(a)(2). The Lifting Restrictions imposed by Dr. Lopez satisfy this definition and constitute his medical opinion.[3]

The other reasons the ALJ gave to discredit Dr. Lopez's opinion are also insufficient to the extent they may have been intended to apply to the Lifting Restrictions. First, some of the ALJ's additional proffered reasons clearly apply only to the restrictions on sitting and standing; this is true of the ALJ's general conclusion that Dr. Lopez's opinion was not supported by his examination and was

---

[3] The court does not share the ALJ's confusion regarding whether Dr. Lopez's medical source statement is based on Helfers's self-reported abilities. First, the "History of Present Illness" section of the report recites what Helfers told Dr. Lopez about her medical problems and symptoms. (R. 549). Almost all of the statements in that section either describe symptoms of pain or begin with phrases such as "claimant stated . . ." , "she rates . . .", or "she noted." (*Id.*). Conversely, nothing in the medical source statement indicates it is based on Helfers' subjective reports; indeed, all but one of the sentences under that heading begin with the phase, "She is able to . . ." (R. 552). The sole exception is Dr. Lopez's statement that Helfers "does not vacuum."

11

inconsistent with the record. (R. 770-71).[4] Next, to the extent the ALJ relied on the timing of Dr. Lopez's exam to discount the Lifting Restrictions, that rationale conflicts with other portions of her decision. The ALJ correctly noted that Dr. Lopez conducted the December 9, 2017 consultative examination less than a year after the alleged disability onset and two of Helfers's shoulder surgeries. (R. 771). However, the same is true regarding the opinions of the non-examining state agency medical consultants, to which the ALJ afforded greater weight. (R. 770). Michael Nenaber, M.D., gave his opinion on January 2, 2018 (23 days after Dr. Lopez ), while James Madison, M.D., gave his opinion on March 7, 2018 (88 days after Dr. Lopez). Both of these opinions came less than a year after Helfers's May 16, 2017 alleged disability onset. (R. 77, 88). In discussing these state agency consultants' opinions, the ALJ found the record supported that Helfers's spine and shoulder impairments limited her ability to perform heavy lifting. (R. 770).[5] Nowhere does the ALJ address how subsequent events or medical treatments improved Helfers's ability to lift; neither did she discuss or cite objective evidence undermining the Lifting Restrictions Dr. Lopez imposed.

---

[4] In these portions of the discussion, the ALJ found: (1) the CE "does not support the degree of limitation in standing and walking"; (2) "the longitudinal record consistently notes that the claimant can walk independently . . . ."; and (3) "inconsistencies with the record with respect to the claimant's ability to stand and walk . . . ." (R. 770-71). Lifting was not mentioned.

[5] To the extent the ALJ notes Helfers had normal grip strength, she did so to show Helfers's gross manipulation abilities were less limited than the state agency consultants opined. (R. 770). Grip strength, however, is not determinative of lifting ability here; as the ALJ noted, Helfers's diminished ability to lift was caused by problems with her shoulders and spine. (*See id.*).

12

While the ALJ rejected the limitations Dr. Lopez imposed on Helfers's ability to stand and walk, the decision actually adopted Dr. Lopez's Lifting Restrictions.[6] "The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of App'x 2*, SSR 83-10 (S.S.A. 1983). This framework does not measure lifting abilities hand-by-hand, but the ALJ reasoned that Dr. Lopez's Lifting Restrictions—15 pounds with left hand and 8 pounds with the right—were consistent with the requirements of light work. (R. 771).

While the ALJ accepted Dr. Lopez's Lifting Restrictions as compatible with the demands of light work, her RFC did not mention any further restriction regarding right-handed versus left-handed lifting; the RFC limited Helfers's abilities regarding other demands of light work but did not further explain or impose restrictions on her ability to lift. (R. 764). During the January 13, 2023 hearing, the ALJ's hypotheticals to the Vocational Expert ("VE") incorporated the various limitations included in the RFC. (R. 820-27). All of the ALJ's hypotheticals assumed Helfers could lift and carry 20 pounds occasionally and 10 pounds frequently—the

---

[6] The ALJ began her analysis of Dr. Lopez's Lifting Restrictions by observing his report "assesses no limitations on her ability to reach, handle, or finger . . . ." (R. 771). However, this was merely an accurate description of Dr. Lopez's opinion; the ALJ did not use it cast doubt on the Lifting Restrictions. (*See id.*).

13

unrestricted lifting demands of light work. (*Id.* at 821). On this record, the ALJ concluded Helfers could perform her past work as a hairdresser. (R.772).

However, when Helfers's counsel examined the VE, he added a hypothetical incorporating Dr. Lopez's specific Lifting Restrictions: 8 pounds with the right hand, 15 pounds with the left. (R. 829). The VE testified there would be no jobs available to an individual with those limitations. (*Id.*) ("The right-hand limitation is less than sedentary, so no, no jobs."). The parties have not cited, and the court has not located, any authority in which a court has evaluated the calculation of a claimant's ability to lift by combining the sum of the weights she could lift with each hand separately. While the ALJ assumed this method was permissible here, the only evidence on the record shows it was not. And the ALJ's decision did not address the VE's testimony in this regard.

An ALJ is required to consider the combined effect of a claimant's impairments and to make specific, well-articulated findings regarding these effects. Failure to do so is reversible error. *Lucas v. Sullivan,* 918 F.2d 1567, 1574 (11th Cir. 1990); *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir. 1987). Here, the ALJ erred by wholly ignoring the VE's responses that considered all of Helfers's impairments in combination. By failing to include the specific Lifting Restrictions imposed by Dr. Lopez—restrictions the ALJ accepted or at least failed to properly reject—her hypothetical was incomplete, and the decision is not based on substantial

evidence. *Grimes v. Barnhart*, No. 04-3065-FJG, 2006 WL 1075253, at *4 (N.D. Ala. Apr. 6, 2006) ("In order for vocational evidence to be substantial it must be based on complete hypotheticals.") (citing *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir. 1999), *superseded by statute on other grounds*; *McSwain v. Bowen,* 814 F.2d 617, 619-20 (11th Cir.1987); *Pendley v. Heckler,* 767 F.2d 1561 (11th Cir.1985)).

Moreover, the only complete hypothetical posed established that Helfers is disabled. Accordingly, the Commissioner's holding is due to be reversed and benefits are due to be awarded. *Grimes*, 2006 WL 1075253, at *4-*5; *Toney v. Barnhart*, No. 02-1983-FJG, 2005 WL 61504, at *4 (N.D. Ala. Jan. 11, 2005) (reversing for award of benefits where plaintiff could not perform past relevant work and record lacked evidence of ability to perform other work)*; see Barnes v. Astrue*, 494 F. Supp. 2d 1275, 1278 (N.D. Ala. 2007) (reversing and remanding with instructions to award benefits where Commissioner failed to carry burden of showing plaintiff could perform other work); *see also Stricklin v. Astrue*, 493 F. Supp. 2d 1191, 1198 (N.D. Ala. 2007) (same); *Haugen v. Astrue*, 497 F. Supp. 2d 1315, 1328 (N.D. Ala. 2007) (same).

## V.  CONCLUSION

For all of the foregoing reasons, the Commissioner's decision is due to be reversed, and the benefits sought are due to be awarded. Helfers initiated her disability claim almost seven years ago. The Commissioner initially denied benefits

but refused to stand by that decision; when faced with the prospect of judicial scrutiny in early 2020, the Commissioner agreed to seek reversal with remand for further administrative proceedings. After reversal here, and in light of the record in this case, the Commissioner is not entitled to a third bite at the administrative apple.

A separate order will be entered.

**DONE** this 30th day of September, 2024.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE